Okay, um, gosh, case number five. And that is number 19-3696, United States v. Smith. Good afternoon. Good afternoon. Good afternoon. May it please the court. My name is Peter Henderson and I represent Brennen Smith. First thing, as Judge Ripple knows, these issues were raised in the United States v. Carter about a month ago that was argued. So we want to make sure the court coordinates their decisions. We're aware. We're aware. Let me start with the aggravated assault conviction. It's clear that simple assault under the Iowa statute is not a crime of violence. It doesn't have as an element the use of force. And so the question is, when a person displays a dangerous weapon in connection with an assault, does that transform it? Does that make as an element the threatened use of force? The government in its brief lays out the elements of this crime and they do not include the threatened use of force. The most that the government can say is that there's an implied use of force. And I think the Porti decision that just came out from this court is instructive on that. The categorical approach under Section 4B1.2 deals with elements, not implied facts. Under Iowa law, to display a dangerous weapon simply means to hold it in a manner that can be seen by others. It doesn't mean to actually use it to threaten somebody. There's actually a difference in language. So under the simple assault statute, you can commit an assault by displaying a dangerous weapon in a threatening manner. But for the aggravation statute, all you need to do is display a dangerous weapon. You do not need to display it in a threatening manner. And so I think you see this especially in the Mott case out of the Court of Appeals in Iowa, where the defendant did not threaten the victim with the knife. He displayed the knife, but we have direct testimony from the victim saying, no, he didn't direct it towards me. He didn't threaten me. I was scared. And that's, again, as Porti discussed, there's a sensible reason why Iowa would increase the penalties for somebody who displays a dangerous weapon, even if they are not threatening another person with that weapon. Well, this subsection of the statute requires a display in a threatening manner. Right. Not just any display, but a display in a threatening manner. That's the alternative in sub C with intentionally points. So we may have a divisibility question, but we've got two ways to commit the sub C offense if A, B, and C are divisible. Let's focus on sub C because that's the focus of this case. There are two ways, intentionally pointing the firearm toward another or displaying in a threatening manner any dangerous weapon. So let me be very clear with numbers. Mr. Smith was committed of committing an assault under Section 708.1, and it was an aggravated assault under Section 708.2 sub 3. And so we do not know how he committed an assault under Section 708.1. So we don't know which form of simple assault he committed. Correct. Although there's sort of a disconnect between the sub C simple assault and the aggravator in the penalty section. Right? There is a correlation, I suppose. You could probably most people who commit the aggravator sub 3 have committed the simple assault sub 3. 708.12C requires that the dangerous weapon be displayed in a threatening manner. But is that requirement as to the threatening manner been interpreted to apply to the first part of that provision, which requires intentionally pointing a firearm at another? Is such an intentional pointing considered to be inherently threatening? I'm not aware of any Iowa cases on that point. Certainly under Portee, pointing a firearm at somebody does not inherently constitute the threatened use of force. But, again, I want to be clear. We do not know categorically under Section 708.1 which of these assaults Mr. Smith committed. All we know is that he committed an assault, and under Section 708.2 sub 3 he displayed a weapon in connection with the assault. And the aggravated form of the offense doesn't require the threatening manner. Correct. It doesn't require the pointing. That's right. It just says uses or displays. That's exactly right. So the offender can commit a sub A or sub B assault under the basic assault statute and be guilty of the aggravated misdemeanor if he's holding a visible weapon. If he's holding a knife or a gun or a dangerous weapon. Exactly. And doesn't the connection with the threat of an unwanted touching, you know, when you have the assault, make the display of a weapon necessarily threatening? No. And there are two parts to that answer. One is, I think, again, to look at the Mott case. We have a victim testifying. So the defendant was stabbing papers and an adding machine with a knife. And the victim said, I didn't think he was threatening me. I didn't think he was, you know, using the knife to threaten me. But I was scared. Yeah. How did the machine feel? Exactly. So under Section 4B1.2, it's about the threatened use of force towards a person. There are other federal statutes that say person or property, in which case maybe this is a different answer. But the other thing, too, as we noted in our brief, the categorical approach is about elements. We know what the elements of this offense are, and it's not the threatened use of force. It's the display of a weapon. And implying elements based on what we think the facts usually involve in the ordinary case is just inconsistent with the categorical approach. It comes from the old residual clause back in James v. United States, et cetera, that was jettisoned in Johnson. And so we're no longer concerned with that. We're concerned only about the elements. Let me just say a brief word about the domestic abuse assault statute because we're sort of ships passing in the night on this one. We're not complaining that this statute or contending that it doesn't require the amount of force required. We're saying that the defendant convicted of domestic abuse assault doesn't have to use any force at all. Again, it's the simple assault. You can commit a simple assault. And if that assault causes bodily injury, then it's aggravated. And the court said as recently as 2017 in United States v. Bennett, there's a difference between intending to batter somebody, for example, and your battery results in a bodily injury. You've intentionally used force, and it has resulted in bodily injury, so it must have been sufficient force. But if you do not intend to use force, then the fact that somebody is injured doesn't mean that you've used force. So, for example, in Flores v. Ashcroft, the example is if you get into a domestic dispute and you're annoying your partner, you're tickling them with a feather, you're poking them, some sort of offensive contact, and they fall and bruise their arm. You haven't used force. That's not the use of force or the threatened use of force. It caused the bodily injury. But, again, as recently as Bennett, that was when you're placed under arrest and you're resisting. You're not trying to hit the officer, but if the officer, well, sort of trying to seize you, injures himself, you've caused a bodily injury through your resisting. That's not using force, as that term is used in Section 4 v. 1.2. So neither of these convictions should have counted as crimes of violence, and I'll save the minute I have left for rebuttal. Thank you. May it please the Court, my name is Kevin Knight. I represent the United States, and I think the Court should know that Brennan Smith is a violent person with a violent history, and his sentence reflects that violence. More specifically, it reflects that he committed two crimes of violence prior to the offensive conviction here, and his base offense level was appropriately enhanced. How would you read 708.12c in conjunction with 708.23? Wouldn't both of those provisions be met merely by pointing a firearm at another without more? I don't believe that's true, Your Honor, and I'll take those in turn if you don't mind. Sure. 708.12c, when you read it in its entirety, I'll direct Your Honor to our appendix, page 1, requires intentionally pointing a firearm towards another or displaying it in a threatening manner. And I think that that caveat of displaying it in a threatening manner takes us outside the realm of porté, which I take as implicit in Your Honor's question. Is the statute divisible? Your Honor, I don't think the Court needs to reach that question here based on our record because we don't have an understanding. We didn't advance that argument today because we don't have, based on the Shepard documents available to us, any indication as to which subsection of the statute he would have been convicted under. The Eighth Circuit authority that we discussed goes in both directions. In some cases, specifically in McGee, the Court seems to assume that the statute is not divisible. I think that a better read is that it is, but in this case, that shouldn't drive the Court's decision because, as I say, the Shepard documents don't indicate which subsection he was convicted under. Well, if we don't know which form of the offense he committed, how can we say categorically this is a crime of violence? Because some of the forms of the offense under the statute don't require as an element the use or threat of force as understood in the Supreme Court's cases. I'm sorry, Your Honor. I keep jumping in. I think that it's agreed between defendant, appellant, and government that, in this situation, the appropriate thing is to look at the least culpable conduct, criminalized under 708.1, and then join up that conduct with the subsection of 708.2.3 that we know the defendant committed. So, in both the defendant's opening brief and our response brief, we characterize the least culpable conduct under 708.1 as an act, without justification, intended to place another person in fear of immediate physical conduct which would be painful, injurious, insulting, or offensive. So, you take that? So, sub B. The sub B offense is what you're contending is the least culpable form. Yes, Your Honor. Both parties agree. Your Honor, and I'd just be clear. I think the defendant agrees with that characterization in their brief, their opening brief, at least. And you take that sub B section, the least culpable section, and you marry it up with the use or display of a dangerous weapon in connection with that conduct under sub B, and it's when you marry those two things up that you see that a threat is necessarily inherent. Judge Robner, I think your question to my friend on the other side illustrated that point perfectly, right? It's the nexus between the use or display of a dangerous weapon in connection with the assault and the assault that necessarily communicates the threat. Does the jury have to find that, though? Your Honor, that implicates a couple of interesting questions, not the least of which is the issue of whether or not the definition of a dangerous weapon actually is enumerating separate elements that need to be found by the jury. We made that argument in our opening brief, and we cited the Iowa jury instructions that speak to the notion that when someone commits the crime of aggravated assault while using or displaying a dangerous weapon, as they did here, those are the elements. The elements are, as defined, as McGee explains, an assault while the defendant uses or displays a dangerous weapon in connection with that assault. Right, but does that require the jury to find the use or threat of physical force, as understood in the Supreme Court's cases, that is, force capable of causing pain or injury? Yes, Your Honor. In our brief, we talked about the general milieu of assault authority in Iowa, which discusses the amount of force that's needed and the intent requirements and the idea that when someone— That's an ordinary case kind of analysis, not an elements analysis. And I think it's important to— We would need to know how the jury would be instructed and whether it would necessarily have to find unanimously beyond a reasonable doubt that there was a use or threat of force, physical force. So I think that Portet is actually instructive on this point, and it illustrates, and it actually helps us, not the defense. When you go to page 8 of Portet, it discusses the idea that even when the enumerated elements do not explicitly reflect a threat, it is still possible for there to be a necessarily inherent threat to the completed offense. Even Portet, which I submit indulges in a number of potentially fanciful hypotheticals that are disclaimed under this Court's precedence, even Portet acknowledges that it is possible when you enumerate an offense, even if you don't explicitly reference a threat in that enumerated elements list, there can be a necessarily implicit threat. And that's exactly what we have here with this offense. Are implicit threats recognized as elements of an offense? Your Honor, I think that it's not the case that under Iowa law, the implicit threat is enumerated as an element. It is the case that the enumerated elements contain necessarily a threat. It is not possible to commit an aggravated assault under Iowa law while using or displaying a dangerous weapon without at least implicitly connoting the message that you intend to injure the victim of the crime. I think that that's consistent with even Portet's analysis. As I say, page 8 of this opinion in Portet discusses the idea that the categorical analysis, even though the ordinary case approach has been disclaimed, still requires more than simply looking at the jury instructing and seeing if there's a threat. This Court's authorized to do more. It's authorized to ask if there's ever been a case under Iowa law in which a victim wasn't threatened and yet the person was convicted of aggravated assault by using or displaying a dangerous weapon. Defendant hangs his hat on Mott. I submit that Mott supports our position. Of course there's a threat connoted in Mott. The threat was I'm going to stab you unless you give me the information that I'm demanding from you. And I think that the other cases that defendants cite similar to Mott underscore that point. We have Thomas. We have Harris. Similarly, those involving an individual respectively charging into an apartment with a handgun drawn and an individual holding his firearm in the port arms position, there's an implied threat there. And the threat is I'm going to shoot you. And that is that inherent threat to the satisfaction of those elements, I think, categorically makes this a crime of violence. I want to ask you something about the 2013 conviction for domestic abuse assault. Yes, Your Honor. Causing bodily injury because the code defines bodily injury as including mental illness. If abuse caused mental illness, how would that be sufficient to demonstrate the user's threat of physical force? Your Honor, my first response to that is here as in Carter, the defendants waived that argument. Without waiving waiver, I think that Your Honor's point is well taken and we would be in a position where we would need to address whether that subsection of the code was itself divisible. And the analogy that I would draw the court to is the Illinois Battery Statute, right? This court has said that the Illinois Battery Statute is divisible even though there's simply an or separating offensive contact from bodily harm. And we've said that that's a divisible statute. And I think that a similar argument could be made here with respect to the Iowa Statute. Again, I don't want to waive waiver. The defendant has never made that argument. Their only argument with respect to the domestic assault causing bodily injury is that there's an intent requirement with respect to the bodily injury. As we explained in our brief, that is made up of whole cloth. That relies on Bennett and Flores, which are respectively inopposite and outdated. In our brief, we discussed Douglas, which is this court's decision from 2017, and Stokely from 2019 in the Supreme Court, wherein the court explained that the force used need not be reasonably expected to cause pain or injury. That's Stokely. If the force used doesn't need to be reasonably expected to cause pain or injury, it certainly isn't the case that the defendant needs to intend to cause that force. I think that there was a telling exchange, Judge Ripple will recall, from the Carter oral arguments, wherein I believe it was Judge Hamilton asked my colleague whether it was possible to find that the domestic abuse assault causing bodily injury crime was a crime of violence without at least acknowledging that Flores had been abrogated. I respectfully submit that it's not possible to do that, but it's high time to acknowledge that Flores is outdated in light of Douglas and Stokely. Unless there are any other questions from the court, I would just ask that the judgment of the district court be affirmed. I think that, Defendant Smith, we don't have an indication in the record below that the court would have imposed the same sentence, an explicit indication from the district court below that it would have imposed the same sentence regardless of how it came down in this categorical analysis, but I think that's a ready inference that could potentially be made, and for that reason also we ask that the court affirm. Thank you. Mr. Henderson. I would like to talk a little bit more about the domestic abuse assault statute. It's victim-centered. The statute addresses what happens to the victim rather than what the defendant does. Did you waive it? I waived an argument that this is somehow indivisible and so mental illness means that it doesn't involve the use of force. It doesn't involve the use of force because the defendant doesn't have to use force, let alone force that causes a bodily injury. This is an assault statute. He has to place somebody in fear of an imminent battery, place somebody in fear of contact which will be insulting or offensive, and if the result of placing that person in fear results in a bodily injury, he is responsible for this aggravated offense. So if he scares somebody, doesn't touch them, doesn't use force whatsoever, they fall backwards and hit their head and sustain an injury, that's an aggravated assault. The defendant hasn't used any force at all, let alone force that would raise to the level of Stoeckling or these other cases. So it's just a different line of cases. It's not that one line has been overruled. They're just on separate tracks. We would ask the court to reverse. Thank you. Thank you. Thank you both so much. And like every other case, this case will be taken under advisement. Thank you. Have a good trip home.